**Joe Luis CERDA, Petitioner,**

v.

**HEDGPETCH, KERN STATE PRISON, Respondent.**

**No. CV 08–0920 DSF (AJW).**

United States District Court,
C.D. California,
Western Division.

Oct. 5, 2010.

Brianna J. Fuller, Federal Public Defenders Office, Los Angeles, CA, for Petitioner.

Beverly Kay Falk, Colleen M. Tiedemann, Peggy Z. Huang, CAAG–Office of

Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

DALE S. FISCHER, District Judge.

The Court has reviewed the entire record in this action, the Report and Recommendation of Magistrate Judge ("Report"), and respondent's objections. The Court concurs with and adopts the findings of fact, conclusions of law, and recommendations contained in the Report after having made a *de novo* determination of the portions to which objections were directed.

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

ANDREW J. WISTRICH, United States Magistrate Judge.

### Facts [1]

On November 17, 2005, petitioner was charged by felony complaint with two counts of possession of a controlled substance. The complaint also alleged that petitioner had suffered a prior felony conviction for assault with a deadly weapon or with force likely to produce great bodily injury. [Lodged Document ("LD") 12; Evidentiary Hearing Exhibit ("EH Ex.") 101].

██ Petitioner met his appointed counsel, Deputy Public Defender Roger Whitenhill, on November 18, 2005. [Evidentiary Hearing Transcript ("EHT") 7]. At the time, Whitenhill possessed a copy of the complaint against petitioner, which includ-

---

1. The following facts are taken from state court records, the transcript of the evidentiary hearing held in this case on April 14, 2010, and the exhibits admitted during that evidentiary hearing. The testimony presented at the evidentiary hearing was not entirely consis-

tent. This statement of facts constitutes the Court's findings of fact based upon the totality of the evidence, including the demeanor of the witnesses who testified during the evidentiary hearing.

ed Deputy District Attorney John Urgo's hand-written initial plea offer in the top right-hand corner of the first page. [EHT 8, 16]. Urgo's initial offer was six years in prison, which was the high-term for a violation of Penal Code section 11350(a), doubled under the Three Strikes Law as a result of the prior strike conviction. [EH Ex. 101; EHT 8]. Whitenhill explained the prosecution's six year offer to petitioner. Petitioner told Whitenhill that he had a drug problem and the two discussed whether petitioner would be eligible for a Proposition 36 ("Prop 36") disposition,[2] which would have provided petitioner the benefit of drug treatment, a noncustodial sentence, and eventual dismissal of the charge. [EHT 17, 20, 24–25, 38, 49].

Whitenhill subsequently met with Urgo to propose a disposition that included a referral for Prop 36 eligibility. Urgo agreed to extend such an offer. Thus, petitioner was offered a deal pursuant to which he would receive either Prop 36 treatment (if the 1993 conviction was not

deemed to be a strike), or a prison term of six years (if the 1993 conviction was deemed to be a strike). [EHT 18, 20; EH Ex. 301 at 2].

Whitenhill discussed that offer with petitioner. At the time of this discussion, Whitenhill was aware that petitioner's prior conviction under section 245(a)(1) of the Penal Code did not necessarily constitute a strike under state law. Rather, the conviction would qualify as a strike only if petitioner either personally used a weapon or caused great bodily injury. [EHT 11–14]. *See People v. Rodriguez*, 17 Cal.4th 253, 261, 70 Cal.Rptr.2d 334, 949 P.2d 31 (1998). Petitioner denied using a weapon, but told Whitenhill that his sister had tripped and suffered a broken vertebra during the assault. Whitenhill believed that the injury would be characterized as great bodily injury. Although he did not have a copy of it, Whitenhill knew that a preliminary hearing transcript existed. According to Whitenhill's notes, he and Urgo were unsure whether the prelimi-

---

**2.** Proposition 36 is codified in Penal Code sections 1210, 1210.1, and 3063.1, and in division 10.8 (commencing with section 11999.4) of the Health and Safety Code. *People v. Murillo*, 102 Cal.App.4th 1414, 1417, 126 Cal.Rptr.2d 358 (2002). It amended state law to create an alternative sentencing scheme for persons convicted of certain drug offenses. It requires that qualifying offenders receive probation, conditioned on participation in and completion of an appropriate drug treatment program, rather than a prison term or probation without drug treatment, thus eliminating the courts' traditional discretion to determine whether such offenders are suitable for probation. *People v. Floyd*, 31 Cal.4th 179, 183, 1 Cal.Rptr.3d 885, 72 P.3d 820 (2003).

Whether a defendant is eligible for treatment under Prop 36 is governed by section 1210.1, which provides in relevant part:

(a) Notwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense shall receive pro-

bation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program .... A court may not impose incarceration as an additional condition of probation ....

(b) Subdivision (a) shall not apply to ....

(1) Any defendant who previously has been convicted of one or more violent or serious felonies as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7, respectively, unless the nonviolent drug possession offense occurred after a period of five years in which the defendant remained free of both prison custody and the commission of an offense that results in a felony conviction other than a nonviolent drug possession offense, or a misdemeanor conviction involving physical injury or the threat of physical injury to another person. Cal.Penal Code § 1210.1.

Petitioner had not remained free of prison custody for a period of five years before the nonviolent drug possession offense in this case. The only question was whether petitioner's prior conviction constituted a strike.

nary hearing testimony would be admissible to prove the strike. [EH Ex. 104]. At the evidentiary hearing, however, Whitenhill stated that he knew the transcript would be admissible to prove that the prior conviction was a strike, but in his opinion, there was an issue of "provability." [EHT 11–14, 29–31]. As Whitenhill explained, there was a "causation" issue because petitioner had told Whitenhill that his sister had tripped during the altercation. In Whitenhill's mind, that raised a question about whether petitioner had caused her great bodily injury. Although petitioner told Whitenhill that he did not believe that the 1993 conviction was a strike, Whitenhill knew that the status of petitioner's prior conviction was a legal determination and that petitioner's opinion was essentially irrelevant. [EHT 14–15, 18].

At the time of the plea negotiations, Whitenhill also was aware that petitioner had been convicted of drug possession in 2003 and sentenced to 32 months.[3] That sentence suggested to Whitenhill that petitioner had admitted in 2003 that his 1993 conviction was a strike.[4] According to Whitenhill, when he asked petitioner about the 2003 sentence, petitioner said that he had not admitted to a prior strike based on the 1993 conviction, and explained that he had been sentenced to 22 months plus a separate consecutive term of 8 months (which, of course, does not add up to a 32 month sentence). [EHT 20–21].

The record also includes a determination made by a deputy district attorney under penalty of perjury on November 17, 2005 stating that petitioner is ineligible for Prop 36 because he had suffered a prior conviction for a serious or violent felony. This document was part of Whitenhill's file. [EH Ex. 102]. It is not clear whether Whitenhill possessed this document at the time of the plea negotiations, or whether he believed that the document was inaccurate or subject to challenge. It also is not clear why Urgo would have offered a Prop 36 referral if his office already had determined that petitioner was ineligible for Prop 36.

Nevertheless, because Whitenhill thought there was some question about whether the prosecution could prove that the 1993 conviction was a strike, he suggested to petitioner that he attempt to obtain an offer for a four year term without a Prop 36 referral. Whitenhill then met with Urgo a third time. He inquired about a deal for a four year prison term (which consisted of the mid-term doubled) without the Prop 36 referral. Urgo accepted that proposal. [EHT 9, 11].

Ultimately, Whitenhill returned to petitioner with two options: (a) a Prop 36 referral, but a prison term of six years if petitioner was found ineligible for Prop 36; or (b) a four year prison term, but no Prop 36 referral. [EHT 18–20, 36–40]. Whitenhill told petitioner that he had a good chance of receiving a Prop 36 disposition because—other than the 1993 assault conviction—petitioner's prior convictions were for drug possession. Petitioner wanted additional time to consider his options, but Whitenhill told him that the offer would not remain open for more than a day.[5] [EHT 31–32, 38–40].

3. Deputy District Attorney Urgo prosecuted that case as well. [EH Ex. 125].

4. Because 16 months is a common sentence for drug possession offenses, doubling the common sentence for a strike would have resulted in a 32 month sentence.

5. Whitenhill testified that the general practice of the District Attorney's Office was that initial offers expired after one day. [EHT 31]. Urgo, however, testified that such offers were not made on a "today only" basis, and ordinarily remained open until several continuances had occurred. [EHT 47].

Based upon all of the information he possessed at the time, Whitenhill believed, and advised petitioner, that there was a good chance that petitioner would receive a Prop 36 disposition. On the other hand, Whitenhill also conveyed to petitioner that there was a chance that he would be found ineligible for Prop 36 because of the 1993 conviction. [EHT 15, 24].

Petitioner chose option (a), which included a Prop 36 referral. [EHT 31–32, 40, 50]. Petitioner believed that he would be remanded to drug court for a determination of whether his 1993 conviction was a strike. Petitioner knew that he was not guaranteed a Prop 36 disposition, but he based his choice on his having been told by Whitenhill that there was a chance that he would be eligible for a Prop 36 disposition. If petitioner had known that he had no chance at obtaining a Prop 36 disposition, he definitely would have accepted option (b), which contained a shorter prison term. [EHT 51–53; Petitioner's Declaration].[6]

Approximately one and one half hours passed between the conclusion of Whitenhill's discussions with petitioner and Urgo about petitioner's plea and the entry of petitioner's guilty plea. Whitenhill's office was three or four blocks from the courthouse. [EHT 8]. Although Whitenhill had questions about whether the 1993 conviction was a strike, he did not attempt to research the law regarding the admissibility of a preliminary hearing transcript concerning a prior conviction to prove a strike, he did not attempt to obtain a copy of the preliminary hearing transcript concerning the 1993 conviction to see if there really was a "causation" issue, and he did not attempt to obtain petitioner's criminal history in order to determine whether he

had admitted that the 1993 conviction was a strike in 2003.

That afternoon, petitioner entered a guilty plea. The following colloquy took place:

THE COURT: Mr. Cerda, you're here on a felony complaint. They indicate it's a second strike this time. My understanding is you worked out a deal and you're going to be pleading and basically you're either going to qualify for Prop 36 and go that route or you've got six years. Is that the deal you understand?

[PETITIONER]: Yeah.

THE COURT: ... Even though you filled out those plea forms, initialed them and everything, [the prosecutor] is going to go over your rights again with you, make sure you understand them and the deal again. He'll explain it. So listen to make sure it's the deal you think you have.

\* \* \* \* \* \*

MR. URGO [THE PROSECUTOR]: Mr. Cerda, I'm holding up two plea forms. One is a plea and advisement and waiver form and the other one is a Prop 36 referral form.[7] Did you read over both of these forms with your attorney, discuss the nature of the charges against you, the consequences of your plea and your constitutional rights with him?

[PETITIONER]: Yes.

MR. URGO: Did you initial the boxes on all pages of the forms and sign at the bottom?

[PETITIONER]: Yes.

MR. URGO: Did your attorney explain to you your rights to a jury trial, con-

6. Petitioner stated that he believed the lower prison term was an offer of 32 months, but acknowledged that the written records suggested that it was four years. In any event,

he testified that he would have taken the lesser term. [EH Ex. 205 at 1–2].

7. These forms are part of the record. [EH Exs. 112 & 113].

frontation, cross-examination, self-incrimination, the subpoena power of the court and your right to a preliminary hearing?

[PETITIONER]: Yes.

MR. URGO: Do you understand each and all of those rights?

[PETITIONER]: Yes.

MR. URGO: Do you waive and give up each and all of those rights?

[PETITIONER]: Yes.

MR. URGO: As a consequence of your plea, Mr. Cerda, if it's determined that a strike prior exists against you, you'll be sentenced to six years in state prison. If not, then you'll be referred to Division 4 to determine if you're eligible for treatment under the Proposition 36 Drug Treatment Program.

If you are entered into that program and you successfully complete it, the case against you will be dismissed. If not, you would be returned for sentencing.

If you're returned for sentencing you could be returned to state prison for up to nine years. If you are sentenced to state prison either through a Proposition 36 violation or by being immediately sentenced to six years in state prison—and one other thing, Mr. Cerda, if for some reason the strike prior doesn't exist and you're still not eligible for some reason to be treated under Proposition 36, you'll be sentenced to 16 months in state prison.

[PETITIONER]: Okay.

\* \* \* \* \* \*

MR. URGO: Do you understand the consequences of your plea?

[PETITIONER]: Yes.

MR. URGO: Are you entering your plea freely and voluntarily and because you feel it is in your best interest to do so?

[PETITIONER]: Yes.

\* \* \* \* \* \*

MR. URGO: Mr. Cerda, to count 1 of the information, a violation of section 11350(a) of the Health & Safety Code, possession of cocaine, how do you plead?

\* \* \* \* \* \*

PETITIONER: Guilty.

MR URGO: And do you admit that you suffered one prior felony conviction alleged under section 1170.12(a) through (d) and section 667(b) through (i) of the penal code, the effect of which is to double the base term on count 1. That prior conviction occurring on September 24th, 1993 under case no. KA018710 for the offense of 245(a)(1) of the penal code. Do you admit suffering that prior conviction?

[PETITIONER]: Yes.

MR. URGO: Do you admit suffering six prior convictions alleged under section 667.5(b) of the penal code, that you were sentenced to state prison on those priors and did not remain free from custody for a period of five years? The effect of your admission is to add one year to your sentence for each prior alleged.

The first occurring on September 24th, 1993, under case no. KA018710 for the offense of 245(a)(1) of the Penal Code.

The second on July 7th, 2003 under case no. KA062554 for the offense of 11350(a) of the Health & Safety Code.

The third on April 6th, 1998 under case no. KA039765 for the offense of 11350(a) of the Health & Safety Code.

The fourth on April 3rd, 1995 under case no. KA026531 for the offense of 11377 of the Health & Safety Code.

The fifth on November 21st, 1991 under case no. FVA012221 for the offense of 11379 of the Health & Safety Code.

And the last on August 19th, 1986 under case no. A537471 for the offense of 11350 of the Health & Safety Code.

[PETITIONER]: Yes.

MR. URGO: Counsel join in the waiver and concur in the plea?

MR. WHITENHILL: Yes.

THE COURT: Thank you. The court finds the defendant has expressly, knowingly, understandingly, and intelligently waived his constitutional rights. The court finds your plea to be freely and voluntarily made with an understanding of the nature and consequence thereof and that there is a factual basis for your plea. The court accepts your plea and you are convicted as charged in count 1 plus find[s] to be true the one strike prior at this time plus find to be true the six 667.5(b) priors.

[LD 14 at 1–8].

After the guilty plea, Whitenhill returned to his office. [EHT 21–22; EH Ex. 105]. He was able to obtain the documents concerning the 2003 proceedings from his computer, and discovered that petitioner had admitted that the 1993 conviction was a strike in 2003. [EHT 21–22; EH Ex. 125].

On December 6, 2005, a hearing was held in front of Commissioner Anthony M. Peters to determine whether petitioner was eligible for a Prop 36 disposition. During that hearing, the trial court stated:

As to your case there has been an issue brought to my attention. Probation is saying you do not qualify [for Prop 36]. On the surface of the report I would say they're wrong; however, there is apparently a case that would indicate that they may be right. We don't know yet. We'll put it over one week and do some research and make sure.

[EH Ex. 115 at 1–2].

On December 21, 2005, another hearing was held, and the following colloquy took place:

THE COURT: We've had chambers discussions in this case. Reviewed the transcript [of the 2005 plea agreement in this case]. It is clear from the transcript at least as far as I am concerned that there was an understanding that if you qualify for Prop 36 you would get it. If you do not qualify for Prop 36, because you admitted a prior strike, you would get six years in state prison. There's only one issue remaining for the court. That is, whether or not those who entered into this agreement were considering treatment in general. The transcript says that Prop 36 route as [sic] an option, which is generally the policy here; that is, that if Prop 36 is not available, drug court is contemplated. That is generally the policy. But the transcript doesn't—isn't very specific about the options. So the court is not entirely sure whether or not drug court was considered in the plea agreement. People?

MR. PHAN:[8] I don't believe that drug court was an option in this case. I think from the transcript it was very clear. It was either Prop 36, if he has no strike or six years state prison if he has a strike. And in this case, he admits to the strike, and we have done research for the court to show that we can look behind the transcript to get to the strike, and that's exactly what happened in this case. So the court is left with two options. Either Prop 36 or that Mr. Cerda lives up to the bargain that he entered into, which is six years state prison. And I would urge the court since he's not eligible for Prop 36 to enter the six years state prison that we contemplated at the time that we took the plea.

---

**8.** Urgo did not attend the hearing. Instead, Deputy District Attorney Ian Phan appeared on behalf of the People. [EH Ex. 117 at 4].

THE COURT: Mr. MacBride?

MR. MACBRIDE: [9] It would have been totally obvious at that time that the plea was taken that Mr. Cerda was not eligible for Prop 36 because he admitted a strike. Therefore, had they thought about it for a second they would have said that he was not eligible for Prop 36 and they would have sentenced him to whatever in Department F. So there must have been some reason for sending it over here.

THE COURT: Either counsel have a position as to whether he qualifies for drug court?

THE DEFENDANT: Your Honor—

MR. MACBRIDE: He does, clearly. The question of whether he's suitable would be something that Mr. Leonard Olivas would determine. I think he is suitable. I have talked to him, and he's very highly motivated. I have also talked to the family. The family has a lot of support for him. Apparently, they didn't think through all the possibilities because had they thought it through and had they really believed that he was going to get six years if he didn't qualify for Prop 36, they would have known it right in court. If he pled to the—if he pled to a strike, he knew that he had been recently to prison, he would not have been eligible for Prop 36. That was kind of a sham deal. I would hope the court would either consider here or send it back for the other court to consider whether drug court would be a possibility.

THE COURT: Well, the court's position [sic] I don't think it was a sham deal. It's a matter of not understanding the law of Prop 36. He didn't qualify, clearly. The issue was if the prior would be sufficiently proven. And nonetheless there was an admission anyway.

MR. PHAN: Right. I don't believe that drug court was really an option for Mr. Cerda. I don't think the agreement was—drug court was ever contemplated as an option for him. The reason being if you look at the plea, Your Honor, it was very clear that if he didn't make Prop 36, that there would be no other alternative other than prison, and it went further in saying that. Let's say we can't prove up the prior, if he didn't prove up the prior and admit, in which case 16 months. They thought it through completely with his lawyer over there in Department F and considered all the options, and drug court was never an option that was on the table. The agreement all along is whether it's Prop 36, where he gets a straight shot at Prop 36, or the other alternative is 16 months; 16 months if we can't prove up the prior or six years if we can. In this case we have an admission to the prior and a legitimate plea where he was represented by counsel. Therefore, he knew exactly what he bargained and he didn't qualify for one, so I think the other alternative that's left for the court and Mr. Cerda is to receive the six years state prison.

THE COURT: Here's the only question I have. If the People were considering and gave the option of Prop 36, that is a rehab option, why would they not consider a more stringent, more difficult, more long-term option such as drug court?

MR. PHAN: I don't know if we were contemplating a rehab option. I think it's more of if he's legally entitled to Prop 36 we're not going to take it away from him. That's his legal right. I don't think when Mr. Ergo [sic] entered into the plea, that he thought Mr. Cerda

---

9. Whitenhill did not attend the hearing. Instead, Deputy Public Defender Thomas Mac-Bride appeared for petitioner. [EH Ex. 117 at 4].

needed long-term drug treatment to help him with whatever problem he has. I think it's more in terms of a legal analysis, whether he's qualified or not. If he's not qualified, state prison is the option for him.

THE COURT: The policy has been and the understanding between the courts, those who take the plea and those that sentence here, is that drug court has always been an option if they qualify. The only reason I hesitate now is because the plea is very clear, Prop 36 or six years. But there's an overriding policy that exists, so I am not sure whether or not the intent of those who entered into the agreement was to necessarily close the door on it. It may be. It may very well be. It's a very precise plea. But no one said, okay, we'll not do the regular routine as drug court as an option. Honestly, I am not sure. All I want to do at this point and what the court is going to rule, unless counsel have anything else to say, send it back and let those who came up with the plea agreement decide what the intent was. If Mr. Ergo's [sic] intent was never to give drug court, six years is what he'll get. If it was something that he did contemplate knowing that there's a policy between courts and they simply didn't set it forth, then that will be explored further. But at this time the court cannot make a decision without the actual parties being involved. So I will send the matter back.

THE DEFENDANT: Your Honor, if I can speak to the matter. I was specifically instructed by the public defender in superior court that if I—that he was going to go ahead and the D.A. was willing to go ahead and allow him to send my case into drug court. And if drug court will go along to overlook the strike and give me Proposition 36 or overlook the strike and give me a program, that they wouldn't—that they wouldn't do anything about it. And they would go ahead and close a blind eye to it and allow me into a program or some type of rehab. But if I was rejected altogether by drug court and sent back to superior court, then I would get the six years with the 80 percent that I plead to agree with. And the thing with me, if justice is to be served in this matter, if you look at the case, all I have is drug offenses.

THE COURT: Let me interrupt you for a second. Listen, Mr. Cerda, the only question is whether or not you qualify legally. Whether or not you need it or don't need it, that can be part of the analogy [sic], but that isn't the bottom line. No one is going to turn a blind eye to what is required under the law. Under the law in drug court you would qualify.

THE DEFENDANT: Exactly.

THE COURT: We need to have both counsel on the case and the court to decide whether or not this was contemplated, so that matter is going to be continued.

[EH Ex. 117 at 4–9].

On February 21, 2006, petitioner filed a motion to withdraw his guilty plea. The motion was denied on March 23, 2006. [LDs 38–39].

On March 24, 2006, petitioner was sentenced. He objected to the proceedings and objected to the denial of his motion to withdraw his guilty plea. Pursuant to the plea agreement, petitioner was sentenced to state prison for a term of six years, consisting of the mid-term for the offense (two years), doubled to four years under the Three Strikes Law, plus one year each for two of the prior convictions pursuant to section 667.5(a) of the California Penal Code. The remaining four prior convictions were dismissed as were the remaining two counts of the information. [LDs 17–19].

Petitioner attempted to file an appeal, but it was rejected as untimely. [LD 21].

On May 1, 2006, petitioner filed two petitions for a writ of mandate or prohibition, both of which were denied. [LDs 25–28]. Petitioner filed petitions for review in the California Supreme Court, which were denied. [LDs 29–32]. He filed habeas petitions in the California Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied. [LDs 22–24, 33–36]. No state court has ever provided a reasoned decision for rejecting petitioner's claims. [*See* LDs 26, 28, 30, 32, 34, 36].

In this federal habeas petition, petitioner alleges that Whitenhill provided ineffective assistance. In particular, petitioner contends that Whitenhill's advice regarding the plea was deficient because he advised petitioner that he had a chance at a Prop 36 disposition when it was clear that petitioner could not qualify for Prop 36 because his 1993 conviction constituted a strike. [Petition, Attachments at 1–3]. According to petitioner, because his counsel provided ineffective assistance, his plea was invalid. [Petition, Attachment at A1–3 & B1–3].[10]

### Standard of Review [11]

A federal court may not grant a writ of habeas corpus on behalf of a person in state custody

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section "2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535

---

**10.** The petition originally included another claim, but petitioner has withdrawn it. [Petitioner's Supplemental Brief at 4].

**11.** Respondent argues that petitioner has failed to exhaust his claim because he included a new allegation that there was a four-year offer that petitioner would have accepted if he would have known that he was not eligible for a Prop 36 disposition. [Respondent's Post–Evidentiary Hearing Brief at 3–6]. Petitioner's claim, as described in his state petitions and in this federal petition, is that his attorney misadvised him by telling him that he could receive a Prop 36 disposition when, in fact, he was ineligible for Prop 36, and therefore that his guilty plea was invalid. This is still petitioner's claim. The fact that petitioner has developed evidence that the earlier offer from Urgo was less than six years (either 32 months or four years) does not alter the fundamental nature of his claim. *See Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994) (holding that where the petitioner claimed that his guilty plea was involuntary because he was grossly misadvised regarding the pos-

sible consequences of his plea in both the state courts and the federal courts, the claim was exhausted whether or not he alleged in state court that the misinformation stemmed from an accurate or an inaccurate translation of counsel's advice); *see generally Weaver v. Thompson*, 197 F.3d 359, 364–365 (9th Cir. 1999) (concluding that a claim based on a "bailiff's contact with the jury after it sent out its note" was not unexhausted because the factual predicate for the claim changed from an allegation that the bailiff instructed the jury to keep deliberating to an allegation that the bailiff told the jurors that a verdict was required on all counts). Furthermore, petitioner has alleged the existence of an offer of less than six years in prison from the time he initially sought to withdraw his guilty plea in February, 2006. [LD 38 at 1–3 (alleging that Urgo made two offers to petitioner: (a) 32 months in prison or (b) a Prop 36 disposition, and if petitioner was ineligible for Prop 36, six years in prison)]. Thus, contrary to respondent's contention, petitioner's allegation that a lesser offer existed is not an allegation raised for the first time in this Court.

U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412–413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 73–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *Weighall v. Middle,* 215 F.3d 1058, 1061 (9th Cir.2000).

■ While only Supreme Court precedent is controlling, other case law is persuasive authority "for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir.2003) (quoting *Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.2002) (internal quotation marks and citation omitted), *amended,* 311 F.3d 928 (9th Cir.2002)); *see Bruce v. Terhune,* 376 F.3d 950, 956 (9th Cir.2004) ("Although only the Supreme Court's precedents are binding on state courts under AEDPA, our precedents may provide guidance as we review state-court determinations.").

Generally, when a higher state court has denied a claim without explanation, federal courts "look through" that denial to the last reasoned state decision. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803–806, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Shack-*

*leford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000), *cert. denied,* 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Where, as here, no state court has provided a reasoned explanation for rejecting a petitioner's federal claim, an independent review of the record is the only means of deciding whether the state courts's determination was objectively reasonable. *Greene v. Lambert,* 288 F.3d 1081, 1088–1089 (9th Cir.2002).

Finally, state court findings of fact are presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In this case, however, no state court made any findings of fact regarding what occurred during the plea negotiations or counsel's performance relating to petitioner's plea or the plea agreement. Therefore, there are no state court findings of fact to which this Court must defer under 28 U.S.C. §§ 2254(d)(2) or (e)(1). *Killian v. Poole,* 282 F.3d 1204, 1208 (9th Cir.2002) (AEDPA deference does not apply where "state courts could not have made a proper determination on the merits" because the evidence upon which adjudication must be based was adduced for the first time at a federal evidentiary hearing), *cert. denied,* 537 U.S. 1179, 123 S.Ct. 992, 154 L.Ed.2d 927 (2003).

## Discussion

Petitioner alleges that Whitenhill provided ineffective assistance because he misadvised petitioner that by accepting a plea offer, petitioner could receive a Prop 36 disposition rather than six years in prison. [Petitioner's Supplemental Brief at 4]. Petitioner alleges that he would have accepted the four-year prison term offer he received if he had known that he was clearly ineligible for Prop 36 and that he would certainly be sentenced to six years in pris-

on. [EHT 51; Petitioner's Supplemental Brief at 4; EH Ex. 205].

■ Petitioner may attack his guilty plea on the ground that his plea was rendered involuntary or unintelligent as a result of ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir.2004).

■ The Sixth Amendment entitles an accused to the effective assistance of trial counsel. To establish ineffective assistance of counsel, petitioner must demonstrate that (1) counsel's performance was so deficient that it was not within the range of reasonable professional assistance, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Alcala v. Woodford*, 334 F.3d 862, 869 (9th Cir.2003); *see Smith v. Robbins*, 528 U.S. 259, 285–286, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). In the context of guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. Ordinarily, to obtain relief on a claim of deficient advice regarding a plea offer, the petitioner must show that if he or she had received accurate information and advice, he or she would not have accepted the plea. *See Hill*, 474 U.S. at 56–57, 106 S.Ct. 366.

■ Here, of course, the situation is a bit different. Whitenhill presented petitioner with a plea offer consisting of two options: (a) a four year prison term with no chance at a Prop 36 disposition or (b) a six year prison term with a chance at a Prop 36 disposition. Petitioner chose option (b). Petitioner alleges that he would have selected option (a) if Whitenhill had provided him with competent advice. In a case like this one, petitioner need not show that he would have insisted on going to trial, but merely that he would have selected a different option. *See generally Lambert*, 393 F.3d at 982–984 (discussing the prejudice requirement in a claim of ineffective assistance during plea bargaining).

Whitenhill advised petitioner that he had a chance at receiving a Prop 36 disposition because it was possible that his 1993 conviction was not a strike. At the time Whitenhill advised petitioner that a Prop 36 disposition was a possibility, his advice was legally and factually incorrect. If Whitenhill had performed a reasonable investigation into the law and the facts, he would have known that petitioner certainly was not eligible for Prop 36 because the 1993 conviction amounted to a strike. In particular, Whitenhill's conduct fell outside the range of reasonable professional assistance because he: (a) failed to investigate petitioner's 2003 conviction to confirm that petitioner had not admitted to a strike; (b) failed to check the law, which clearly provided that preliminary hearing transcripts are admissible to prove a strike; (c) failed to obtain the preliminary hearing transcript or research the law, which would have confirmed that petitioner's assault constituted a strike because it involved great bodily injury; and (d) advised petitioner to enter into a plea pursuant to which he admitted that the 1993 assault was a strike, thereby precluding him from Prop 36 eligibility. These failures are discussed in detail below.

First, Whitenhill could have looked up the 2003 conviction to determine whether petitioner previously had admitted to a strike. Whitenhill was able to look up this information quickly and easily, but neglected to do so until it was too late: that is, until *after* advising petitioner that he could receive a Prop 36 disposition and *after*

petitioner entered a guilty plea based on incorrect advice about his Prop 36 eligibility. If Whitenhill had simply checked the file concerning the 2003 conviction before petitioner pleaded guilty, he would have discovered that in 2003, petitioner admitted that the 1993 conviction was a strike.[12] Whitenhill discovered that fact immediately after petitioner entered his guilty plea when Whitenhill returned to his office and pulled the file. [EHT 12; EH Ex. 125 at 6].

■ Under California law, petitioner's 2003 admission to the 1993 strike was the equivalent of a guilty plea, which "admits every element of the offense charged and is a conclusive admission of guilt. It waives any right to raise questions about the evidence, including its sufficiency." *People v. Lobaugh,* 188 Cal.App.3d 780, 785, 233 Cal.Rptr. 683 (1987); *see* Cal.Penal Code § 1025(a) ("When a defendant who is charged in the accusatory pleading with having suffered a prior conviction pleads either guilty or not guilty of the offense charged against him or her, he or she shall be asked whether he or she has suffered the prior conviction. If the defendant enters an admission, his or her answer shall be entered in the minutes of the court, and shall, unless withdrawn by consent of the court, be conclusive of the fact of his or her having suffered the prior conviction in all subsequent proceedings."). So, for example, a defendant's prior admission of a section 12022(b) enhancement— namely, that he personally used a dangerous or deadly weapon in the commission of a felony—constitutes proof that offense is

a serious felony. *People v. Equarte,* 42 Cal.3d 456, 465, 229 Cal.Rptr. 116, 722 P.2d 890 (1986); *People v. Shirley,* 18 Cal. App.4th 40, 44–45, 22 Cal.Rptr.2d 340 (1993). "[P]roof is not required where the defendant admits a properly pleaded enhancement pursuant to a plea bargain, after the required advisement and waiver of constitutional rights, for in that situation, where a bargain is struck, the defendant's admission is not limited to the scope of the fact of the conviction, but extends to all allegations concerning the prior, even though the People might have been unable to prove those allegations." *People v. Leever,* 173 Cal.App.3d 853, 872, 219 Cal. Rptr. 581 (1985) (internal citations omitted), *disapproved on other grounds, People v. Ervin,* 22 Cal.4th 48, 91, 91 Cal.Rptr.2d 623, 990 P.2d 506 (2000). Thus, petitioner's 2003 admission that he suffered a prior "strike" by virtue of the 1993 conviction obviated the need for the prosecution to come forward with any evidence concerning the 1993 conviction, and rendered the 1993 conviction a serious felony and a strike under California law.

Both the deputy public defender who represented petitioner at the Prop 36 hearings and the trial court presiding over those hearings, recognized that petitioner's 2003 admission that he suffered a prior strike conviction in 1993 was all that was necessary to prove the strike, and that as a result, petitioner "clearly" did not qualify for Prop 36. [EH Ex. 117 at 5-6 ("It would have been totally obvious at that [sic] time that the plea was taken that Mr.

---

**12.** Petitioner did not merely admit that he suffered a conviction in 1993 leaving the question whether the conviction constituted a strike an open one. Rather, he admitted that the 1993 conviction was a "strike" within the meaning of the Three Strikes law. [*See* EH Ex. 125 at 6 (Petitioner answered "Yes," when asked: "Do you admit that you suffered one prior felony conviction alleged under sec-

tion 1170.12(a) through (d) and section 667(b)through (i) of the Penal Code? The effect of your admission is to double the base term on count one, that prior occurring on September 24, 1993, under case number KA0186710 the offense of 245(a)(1) of the Penal Code. Do you admit you suffered that prior conviction?") ].

Cerda was not eligible for Prop 36 because he admitted a strike.") & 6 (petitioner "didn't qualify, clearly. The issue was if the prior would be sufficiently proven. *And nonetheless there was an admission anyway.*") (emphasis supplied)]. Had Whitenhill simply checked the readily available record of the 2003 plea, he would have been able to advise petitioner that he was not eligible for Prop 36.[13] *See Riggs v. Fairman,* 178 F.Supp.2d 1141, 1147–1148 (C.D.Cal.2001) ("Another peculiar circumstance weighing in favor of the conclusion of unreasonableness is the ease with which Petitioner's counsel could have gained the critical information concerning Petitioner's criminal history."), *aff'd,* 399 F.3d 1179 (9th Cir.), *reh'g en banc granted then case dismissed,* 430 F.3d 1222 (9th Cir.2005).[14]

Second, neither the record nor the law supports Whitenhill's assertion that his advice was based upon a genuine legal issue about the "provability" of the 1993 conviction.

Whitenhill's contemporaneous notes suggest that he did not know whether the preliminary hearing transcript would be admissible to prove the strike. Whitenhill writes:

The issue is this, in 1993 he plead to a 245(a)(1) without admitting a 12022.7 GBI enhancement. According to the Preliminary Hearing transcript, Mr. Cerda and his sister the victim got into a shoving match. According to the sympathetic sister she pushed first, and then tripped on her saddle causing her to fall to the floor. Unfortunately, she broke her arm and a vertebra.

In 2003, Mr. Cerda plead to a 11350 and admitted the 1993 245(a)(1) as a strike prior. You [Deputy Public Defender Guzman] were actually his attorney in 2003.

Urgo and I didn't know the law on the provability of GBI priors.

[EH Ex. 105].[15]

 To the extent that Whitenhill's advice was the result of his lack of knowledge about whether the preliminary hearing transcript would be admissible to prove that the victim suffered great bodily injury, his error was outside the range of

---

**13.** Whitenhill testified that petitioner told him that the 2003 conviction did not involve a "two strike" sentence. Whitenhill was skeptical of petitioner's assertion, and he understood that a client's perception of prior conviction did not have any bearing on whether a conviction was a strike under California law. Whitenhill obviously knew that he should check the file concerning the 2003 conviction, because he actually did—but by then it was too late. [EHT 14–15, 18, 20–22]. In any event, petitioner's alleged assertions regarding the legal effect of his prior conviction do not excuse counsel's failure to research the issue. *See Riggs,* 178 F.Supp.2d at 1147 (stating that counsel's decision to accept a client's representations about his priors without researching them independently is "not laudatory" and may amount to deficient performance) (citation omitted).

**14.** In fact, when petitioner appealed his 2003 conviction, arguing that the 1993 conviction was not a strike, the California Court of Appeal rejected that contention. [LD 11].

**15.** Whitenhill's lack of knowledge regarding the admissibility of the preliminary hearing transcript is corroborated by Urgo. Urgo stated that at the time of petitioner's 2005 guilty plea, he had concluded that he would need to prove the great bodily injury allegation in order to establish that the 1993 conviction was a strike, and that at the time he reviewed the file, he did not know "if the preliminary hearing transcript could be used to prove great bodily injury that was not alleged in the information, and thus, whether the prior assault conviction would be a strike." [EH Ex. 301 at 4]. On the other hand, Whitenhill testified at the evidentiary hearing that both he and Urgo knew that the preliminary hearing transcript was admissible to prove that the victim of the offense underlying the 1993 conviction suffered great bodily injury. [EHT 14–15].

reasonable professional assistance. By 2005, it was well settled in California that the trial court may examine the entire record concerning a conviction, including the preliminary hearing transcript, to determine if a prior conviction is a serious or violent felony. *People v. Reed,* 13 Cal.4th 217, 229–230, 52 Cal.Rptr.2d 106, 914 P.2d 184 (1996), *cert. denied,* 519 U.S. 873, 117 S.Ct. 191, 136 L.Ed.2d 128 (1996); *People v. Guerrero,* 44 Cal.3d 343, 355–356, 243 Cal.Rptr. 688, 748 P.2d 1150 (1988). Competent counsel would have been aware of this law or would have taken the time to learn the answer to his discrete, uncomplicated legal question. Although Whitenhill stated that he did not "have access to Lexis or Westlaw in the courtroom," he did not explain why he could not have returned the few blocks to his office during the one and one-half hour lunch break or, as he suggested, why he could not have "call[ed] our appellate department to obtain quick legal advice." [*See* EH Ex. 206].

Next, to the extent that Whitenhill's advice was based upon his opinion that there was an arguable "causation" issue, his performance also was deficient. During the evidentiary hearing, Whitenhill stated that he knew that the preliminary hearing transcript could be used to prove that petitioner's 1993 conviction was a strike, but he believed there was a "causation" problem because it wasn't clear that petitioner caused his sister's great bodily injury. [EHT 14–15].

By "causation," Whitenhill apparently was referring to the requirement that petitioner personally inflicted the great bodily injury. Cal.Penal Code § 1192.7(c)(8). According to Whitenhill, petitioner had told him that his sister tripped during the assault.

Whitenhill's testimony that he believed there was a "causation" issue lacks credibility. It is not supported by the record, which indicates that Whitenhill was focused on whether the preliminary hearing testimony was admissible to show that the victim suffered great bodily injury. [*See* EH Exs. 104–105]. If Whitenhill truly had some legitimate reason to believe there was a causation issue, he inexplicably failed to raise it. He neither mentioned it in his transfer memo to the deputy public defender who would be handling the Prop 36 hearings nor raised it before the trial court. Further, there is no legal basis for the argument Whitenhill apparently intended to make—that because the victim tripped after petitioner engaged her in a pushing match, petitioner did not personally cause the great bodily injury. California law is to the contrary. *See* CALJIC No. 17.20; *People v. Cross,* 45 Cal.4th 58, 66–69, n. 3, 82 Cal.Rptr.3d 373, 190 P.3d 706 (2008) (interpreting section 12022.7(a), concerning a different enhancement employing nearly identical language, and holding that "to the extent defendant argues that great bodily injury invariably requires the application of physical force to the victim in order to cause great bodily injury, we reject that view") (citations omitted); *People v. Guzman,* 77 Cal. App.4th 761, 764, 91 Cal.Rptr.2d 885 (2000) (discussing an allegation of personal infliction of great bodily injury in case where the defendant unsafely turned his vehicle into oncoming traffic, and holding that "[t]his volitional act was the direct cause of the collision and therefore was the direct cause of the injury. Appellant was not merely an accomplice. Thus, appellant personally inflicted the injury on Ms. Quinonez. Further, the accidental nature of the injuries suffered does not affect this analysis").

If Whitenhill had bothered to perform minimal legal research or obtain the preliminary hearing transcript, all of his doubts about whether the 1993 conviction constituted a strike would have been im-

mediately resolved, and he would have known that petitioner's 1993 conviction was a strike which rendered petitioner ineligible for a Prop 36 disposition.

Finally, it appears that the 2005 guilty plea itself may have precluded a Prop 36 disposition.[16] As part of the plea agreement, petitioner admitted (as he had done in 2003) that he "suffered one prior conviction alleged under Section 1170.12(a) through (d) and Section 667(b) through (i) of the penal code, the effect of which is to double the base term on Count 1. That prior occurring on September 24th 1993 ..." [EH Ex. 114 at 6–7]. At the conclusion of the hearing, the trial court found "to be true the one strike prior." [EH Ex. 114 at 8].

Petitioner, then, did not merely admit that he had been convicted of assault in 1993. Instead, petitioner admitted that his conviction was a strike, and that it would be used to double his base prison term. Accordingly, it appears that Whitenhill advised petitioner to enter a plea that itself precluded petitioner from Prop 36 eligibility.

Whitenhill's failure to adequately research the law and the facts surrounding petitioner's 1993 and 2003 convictions was deficient, and resulted in his providing petitioner with inaccurate advice. Contrary to Whitenhill's advice, there was no longer any possibility that petitioner was eligible for Prop 36. *See Riggs,* 178 F.Supp.2d at 1147 ("given the serious penal consequences of the Three Strikes law, it is the duty of defendant's counsel, in advance of plea or trial predicated upon convictions charged as strikes, to determine, on the basis of records which are necessary to an informed decision, whether the convictions are strikes under the California law, to advise his or her client accordingly, and that it is ineffectiveness of counsel to fail to do so") (quoting *People v. Morgan,* 91 Cal.App.4th 1324, 1327, 111 Cal.Rptr.2d 502 (2001)). As a result, petitioner pleaded guilty based upon a nonexistent possibility of a Prop 36 disposition, and unbeknownst to him, the plea agreement was really just a deal for six years in prison.

 Petitioner also has demonstrated that he was prejudiced by Whitenhill's deficient performance. If petitioner had known there was no chance he could receive a Prop 36 disposition (and therefore would certainly receive a six-year prison term), he would have accepted the offer for a four-year prison term. Not only has petitioner so testified [EHT 51], but common sense confirms that any defendant faced with a choice between four years in prison or six years in prison would choose the lesser term. *See Hill,* 474 U.S. at 56–57, 106 S.Ct. 366.

For the foregoing reasons, petitioner received ineffective assistance of counsel, and the state court's determination to the contrary is an unreasonable application of clearly established Supreme Court law. The only remaining issue is the remedy.

As the Supreme Court has explained:

Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal habeas courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters "as law and justice require." In construing

---

16. Petitioner's counsel so argues [Petitioner's Supplemental Brief at 17–19], and respondent has not addressed this argument [*see* Respondent's Reply to Supplemental Brief at 2–4 (essentially arguing that petitioner got a good deal by receiving a prison term of six years since he faced a theoretical maximum of 16 years and that petitioner cannot legitimately complain about the Prop 36 eligibility issue since he likely would have taken the six year offer even without the possibility of Prop 36)].

 

§ 2243 and its predecessors, this Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.

*Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *see also McQuillion v. Duncan,* 253 F.Supp.2d 1131, 1134 (C.D.Cal.2003).

 The appropriate habeas remedy "should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred," and in some circumstances granting a new trial is not conducive to that end. *Nunes v. Mueller,* 350 F.3d 1045, 1056–1057 (9th Cir.2003) (granting relief based on ineffective assistance of counsel during the plea bargaining process, and holding that the proper form of habeas relief was an order directing the state to release the petitioner unless it offered him the same material terms that were contained in its original plea offer), *cert. denied,* 543 U.S. 1038, 125 S.Ct. 808, 160 L.Ed.2d 605 (2004); *see also United States v. Blaylock,* 20 F.3d 1458, 1468 (9th Cir.1994) (discussing the proper remedy for ineffective assistance of counsel during plea bargaining). Where, as here, a defendant has been deprived of the opportunity to make a reasoned decision about a plea offer because of ineffective assistance of counsel, the proper remedy is reinstatement of the offer. *See Nunes,* 350 F.3d at 1056–1057; *see also Blaylock,* 20 F.3d at 1468–1469.

### Conclusion

It is recommended that the petition be granted and that respondent be directed to release petitioner within twenty-eight (28) days unless the State of California reinstates the plea offer of a four-year prison term in exchange for petitioner's guilty plea.

Aug. 23.2010.