Filed 4/15/14  P. v. Romero CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>JOSE PABLO ROMERO,<br><br>         Defendant and Appellant. | A137356<br><br>(Sonoma County<br>Super. Ct. No. FCR287013) |

Defendant Jose Romero appeals from a judgment convicting him of a single count of aggravated mayhem.  He contends there was insufficient evidence of specific intent to support the conviction, that there was also insufficient evidence to support the finding that he was 16 years of age when he committed an offense used as a "strike" to double his sentence and that the use of a prior juvenile adjudication as a "strike" violated his rights under the United States Constitution, and finally that the trial court erroneously imposed two life terms under California's Three Strikes law.  We conclude that only his final contention has merit, requiring a modification of the sentence.  We shall otherwise affirm the judgment.

**Factual and Procedural Background**

Defendant was charged with a single count of aggravated mayhem in violation of Penal Code section 205.[1]  The following evidence was presented at trial:

---

[1] All statutory references are to the Penal Code.

1

Defendant met Angela Hall in December 2010. At that time Hall was 19 years of age and defendant was 34. They secretly married in January 2011. In April 2011 defendant told Hall that he had a daughter with his ex-girlfriend, Olga Robles, and that he and Robles were battling for custody of their daughter. Defendant and Hall then agreed to a scheme to fabricate evidence of an assault by Robles against Hall that would cause Robles to be deported and permit defendant to obtain custody of defendant's daughter.

Between April and August 2011, four incidents of purported attacks by Robles against Hall were falsely reported to the Novato Police Department, but none led to the prosecution of charges against Robles. Defendant then told Hall that it was necessary to inflict a more severe injury on her body that the authorities would believe she could not self-inflict.

On August 11, 2011, defendant and Hall picked up another man and the three drove to a spot in Fairfield near the Department of Motor Vehicles (DMV) office. Defendant told Hall that an "X" would be cut on her back and instructed her to tell police that she was attacked by two men who told her to leave Robles alone. Hall decided she did not wish to continue with the contrived assault and walked away from the two men. However, the men chased and caught her, then punched and kicked her to the ground. Hall testified that she next felt defendant cut her back. A witness whose van was parked near the DMV office testified that he saw the two men run from the scene and heard one of them say, "Let's get out of here." Hall called 911and told the dispatcher that two men had attacked her.

Officer Paul Augusto arrived at the scene and described the injury to Hall's back as "one of the most horrific injures" he had ever seen. There were two deep cuts on her back that formed a "V" from her shoulders to her waist. She was rushed to the hospital for emergency surgery. Close to 100 staples were used to close the wounds on her back. At the time of trial, approximately nine months later, she was still experiencing pain and discomfort in her back. Although Hall initially claimed falsely that Robles had ordered the attack, she ultimately acknowledged that the attack was part of the scheme with defendant to cause Robles to be deported.

In a bifurcated trial, the jury first convicted defendant of aggravated mayhem. In the second phase of the trial, the jury found true a 1993 juvenile adjudication of robbery with a firearm. Treating the juvenile adjudication as a prior strike under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subd. (a)), the court sentenced defendant to two life terms with the possibility of parole. Defendant filed a timely notice of appeal.

**Discussion**

1. *Substantial evidence supports the conviction for aggravated mayhem.*

Section 205 provides that "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body." Aggravated mayhem requires " 'the specific intent to cause a maiming injury.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 86.)

Defendant contends the evidence was insufficient to support the conviction for aggravated mayhem. He argues that the evidence proves, at most, that he intended to cause an injury that appeared severe for the purpose of falsely holding Robles responsible for violent conduct, and that the evidence is not sufficient to establish that he intended to cause permanent injury. The argument rests on the premise that evidence of his intent to falsely accuse Robles is inadequate to prove an intent to permanently disfigure Hall. We find this argument unpersuasive.

When considering a defendant's challenge to the sufficiency of the evidence, the court reviews the entire record most favorably to the judgment to determine whether it contains substantial evidence from which a trier of fact could rationally find the essential elements of the crime beyond a reasonable doubt. The court does not reweigh evidence or reassess a witness's credibility; we presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) "Unless it is clearly shown that 'on no hypothesis whatever is the sufficient substantial evidence to support the [jury's] verdict[s,]' we will not reverse." (*People v.*

3

*Stewart* (2000) 77 Cal.App.4th 785, 790.) If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) For specific intent crimes, "[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.)

Defendant makes the erroneous assumption that his intent to frame Robles is irreconcilable with an intent to permanently injure Hall. It may be, as defendant suggests, that the jury could have concluded that the deep slashes down Hall's back were inflicted with the intention of only creating the appearance of a severe injury for the purpose of falsely incriminating Robles. But the nature of the injuries to Hall's back were such that the jury could also properly conclude that, for the purpose of framing Robles, defendant intended to cause injuries that would be permanent. (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 88.)

Although "[e]vidence that shows no more than an 'indiscriminate attack' is insufficient to prove required specific intent," here there was ample evidence to support an inference of intent to maim rather than to attack indiscriminately. (*People v. Park* (2003) 112 Cal.App.4th 61, 64; *People* v. *Ferrell* (1990) 218 Cal.App.3d 828, 835.) "A jury may infer a defendant's specific intent from the circumstances attending the act, the manner in which it is done, and the means used, among other factors." (*People v. Ferrell*, *supra*, at p. 834.) "[E]vidence of a "controlled and directed" attack or an attack of "focused or limited scope" may provide substantial evidence of a specific intent to maim." (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 831 (*Szadziewicz*), quoting *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162.)

In *Szadziewicz*, the defendant was convicted of aggravated mayhem after he entered the hotel room of his daughter's boyfriend without notice, held him on the bed, and slashed his face with a box cutter from the temple towards the nose, then back towards the ear. (*People v. Szadziewicz*, *supra*, 161 Cal.App.4th at pp. 829, 832.) Defendant claimed he entered the victim's room to find drugs but aborted the mission

4

because of the altercation.  (*Id*. at p. 831.)  On appeal, the court held that the "placement and nature" of the "facial lacerations amply supported a reasonable inference that [defendant] meant to disfigure" the victim's face.  (*Id*. at p. 832.)  Here, much like the situation in *Szadziewicz*, defendant pinned the victim to the ground and slashed her with a box cutter.  This was not a random attack, but a controlled and directed attack on Hall's back.  (*People v. Ferrell*, *supra*, 218 Cal.App.3d at p. 835.)  Defendant planned to carve an "X" on Hall's body.  The depth of the cuts was so great that Officer Augusto described the injury as "one of the most horrific injures" he had ever seen.  Like the victim in *Szadziewicz*, Hall received over 100 stitches and was hospitalized for several days.  Viewed in the light most favorable to the judgment, the jury could reasonably infer that defendant acted with the requisite specific intent to permanently disfigure Hall.

2. *Substantial evidence supports the inference that defendant was 16 years old when he committed the crime he was found to have committed in juvenile court.*

Documentary evidence presented in the second phase of trial showed that defendant, born in December 1976, was found by the juvenile court in 1993 to have committed an armed robbery and, in 2006, as part of a negotiated plea to a charge of inflicting corporal injury on a spouse, admitted that the 1993 juvenile adjudication was a prior strike conviction.  Defendant asserts, for the first time on appeal, that there is insufficient evidence that he was 16 years of age when he committed the robbery, the subject of the 1993 juvenile adjudication.  Without evidence that he was 16 years old at the time of the offense, he contends the juvenile adjudication does not qualify as a strike under sections 667, subdivision (d)(3)(A) and 1170.12.

To warrant imposition of the increased sentences authorized by the Three Strikes law, the prosecution must present evidence to establish that a prior conviction (or adjudication) was a strike as defined by the statute.  (*Cerda v. HedgPetch* (C.D. Cal. 2010) 744 F.Supp.2d 1058, 1071; *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1530.)  However, proof of a prior conviction "is not required where the defendant admits a properly pleaded enhancement pursuant to a plea bargain, . . . where a bargain is struck, the defendant's admission is not limited to the scope of the *fact* of the conviction, but

5

extends to all allegations concerning the prior, even though the People might have been unable to prove those allegations." (*People v. Leever* (1985) 173 Cal.App.3d 853, 872, disapproved on other grounds in *People v. Ervin* (2000) 22 Cal.4th 48, 91.) In *HedgPetch*, petitioner's previous "2003 admission that he suffered a prior strike by virtue of a 1993 conviction obviated the need for the prosecution to come forward with any evidence concerning the 1993 conviction, and rendered the 1993 conviction a serious felony and a strike under California law." (*Cerda, supra,* at p. 1071.)

At trial, defendant did not question the sufficiency of the evidence to prove he was 16 years of age when he committed the robbery adjudicated by the juvenile court in 1993. Waiver aside, the evidence presented to the jury confirms that defendant admitted to incurring a prior strike in connection with his 2006 plea bargain. The first page of the 2006 presentence report states, "Guilty plea and admission as to prior strike conviction." Reference is made to the admitted prior strike on the second page of the 2006 presentence report, which is a copy of the juvenile adjudication from 1993. Defendant's admission to a prior strike obviated the need for further evidence concerning the 1993 juvenile adjudication. Although defendant contends that the "strike" to which he previously admitted is not the 1993 juvenile adjudication, he has not offered any evidence of any other adjudication to which he might have been referring. In all events, even if defendant was referring to a different adjudication, that would not change the significance of his admission that he had incurred a single prior "strike.*"*

Thus, the record contains sufficient evidence that defendant's juvenile adjudication qualified as a strike under the Three Strikes law.

3. *The use of defendant's prior juvenile adjudication as a "strike" is constitutional.*

Defendant asserts the court's use of the prior juvenile adjudication to double the penalty for his conviction of aggravated mayhem violates his Fifth, Sixth and Fourteenth Amendment rights under the *United States v. Tighe* (2001) 266 F.3d 1187 and *Apprendi v. New Jersey* (2000) 530 U.S. 466 line of cases, because he was not entitled to a jury trial in his juvenile proceedings. Defendant acknowledges that in *People v. Nguyen*

(2009) 46 Cal.4th 1007, 1025, our Supreme Court rejected these constitutional arguments, but asserts them for the purpose of preserving for federal review the contention that *Nguyen* was wrongly decided. We of course are bound by the Supreme Court decision in *Nguyen*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

4. *The trial court erred in imposing two life sentences*

Because of defendant's prior strike, the trial court construed the Three Strikes law to require it to double the life sentence prescribed by section 205 and imposed on defendant two indeterminate life terms. Defendant correctly contends, as the Attorney General acknowledges, that the court instead should have sentenced him to one indeterminate term, with the seven-year minimum period of confinement for parole eligibility (§ 3046) doubled to a minimum of 14 years. (*People v. Jefferson* (1999) 21 Cal.4th 86, 96-101.)

## Disposition

The matter is remanded to the superior court with directions to resentence defendant in accordance with the views expressed herein. In all other respects the judgment is affirmed.

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.

7